Good morning, Your Honors. May it please the Court. My name is Zachary Nightingale, counsel for Petitioner Rodolfo Camins, who is in court today with his wife, Lloyd. The principal issue in this case is the retroactive application of one of IHRA's many new provisions, 1101A13, that specified what happens to a returning lawful permanent resident of the United States. The Supreme Court precedent lays out a two-part test known as the Landgraf test. There seems to be no dispute on the first part of the test that Congress did not, with any clear voice, express whether this new statute should apply retroactively, namely to individuals with convictions coming through a guilty plea before the law changed. The parties agree on that, so we have to move on to the second step of Landgraf. The second step is whether or not this new statute has a retroactive effect. We're guided by principally St. Cyr, the Supreme Court decision, as well as several other decisions from this Court applying St. Cyr that indicate how to determine if there is a retroactive effect. I'm pretty sure all of the cases to have found an improper retroactive effect involved a plea of guilty or no contest, which is exactly what's present here. So we look to the fact that the plea was entered early in 1996 before the law changed. At that time, the Flutie Doctrine, Supreme Court Flutie Doctrine was in place that said a lawful permanent resident who made a brief trip, brief casual and innocent trip outside the United States isn't seeking admission when they return. They are not subject to the grounds of inadmissibility. Therefore, at the time that Mr. Camerons entered his plea, he would have known that even though he has a conviction that might be described by a ground of admissibility, he doesn't have to worry when he travels that he would be subject to admissibility. He would be able to freely travel and return to the United States without a problem, without being charged and put in deportation proceedings. It wasn't until the law changed that that ostensibly that rule changed. And then he became subject to inadmissibility. And as a result, he was eventually charged with inadmissibility. That law changed because the Flutie Doctrine is overruled by statute? Well, the Flutie Doctrine was only by Supreme Court interpretation. The statute certainly purports to overturn the Flutie Doctrine. They don't do so particularly clearly because they use this sort of negative language. A returning lawful permanent resident is not subject to the grounds of admissibility unless one of six grounds are triggered. So they don't explicitly say that the Flutie Doctrine is overturned. In this case, the agency, then INS, now DHS, certainly operated in that way. Yes. Now, have we in this circuit held that Flutie is gone as a result of the new statute? Not in so many words. I think there are cases that have assumed that. And other circuits have specifically so held. Other circuits have. Has any circuit held that Flutie has survived the new statute? I believe district court cases have, Your Honor. But I don't believe a circuit court has. The – I think the best rendition of that is actually in the dissent by Justice Rosenberg from the BIA decision on it. The BIA held that Flutie doesn't survive. Of course, that's not binding. In the Collado decision, and there's a strong dissent, and that, by Judge Rosenberg, which actually lays out, I think, the best argument that Flutie still can survive because the statute doesn't explicitly say what happens. But your argument is even if Flutie does not survive, and even if under the new law a brief, casual, and innocent trip abroad and then a return constitutes coming back, nonetheless, the retroactive application is unfair here based upon a sincere argument. That's correct. So, in a sense, Flutie continues to exist for lawful permanent residents who only would be triggered – only under a reading of the new law would be subject to invisibility because of a conviction from before 1996 or 97. It was obtained through plea of guilty or no contest, which is the case here. So it's the retroactivity of the new law. The new law cannot apply retroactively to individuals with such conditions. Okay. What do you make of the argument, which is one of the arguments made by the government, that, well, even if there is a retroactivity problem based on the fact that this is a plea, the behavior of your client was not merely the behavior of pleading guilty, but it was the behavior after the new law comes into effect of traveling abroad? Well, the thing is that once the new law came into effect, there was no way to make a different choice. The problem with that argument is that he made the choice to enter a plea, giving up his rights to a trial and all the rights, in exchange for something. And that's the essence of the sincere decision. After that plea was entered and the exchange was made, so to speak, he had no objection to the ability to do anything, you know, other than decide, okay, it's too dangerous for me to travel. But the point is that when he made the decision to enter the plea, he did so knowing that I can still travel. So the bargain was already made. When the law changed, he didn't have any choice any longer. So all he could do is not travel at all.  And by entering the plea, he could travel. That was part of the original deal. I see. So the bargain, as it were, as you're – if that's the word we use, is complete at the time of entering the plea. And the bargain is, well, I suffer the adverse immigration consequences that are currently in effect. Exactly. I don't suffer any adverse consequences that might subsequently be passed. The – right. There's no bargain involved in the choice whether to travel. He's taking a risk. But the – but the essence of St. Cyr was he gave up some rights at the time that he entered the plea in exchange for knowing that he wouldn't have an immigration problem. So that's the relevant time to determine the relevant action and the date that involves the quid pro quo that St. Cyr referenced. I would like to reserve some time for replies. If there's no other questions, I'll – Any other questions on the bench at this time? So why don't you take your seat. We'll hear from the government, and then you'll have a chance to respond. Good morning. May it please the Court. Excuse me. My name is Jesse Bless. I represent the Attorney General, Alberto Arcazales. I think the focus of the Court in this case in terms of the retroactive application is what is the critical event for his – for Mr. Kameen's inadmissibility. It wasn't the guilty plea like it was in St. Cyr. It was when he committed the act. The focus of this provision, 101A13C, is – Committed the act. Which act? The act of traveling abroad and coming back? The current act that delineates the provisions for coming – for seeking admission. That is to say the current act meaning the act of after having the conviction, after the statute has passed, now going abroad and coming back again. That's the act? Right. That's correct. And the focus of the – the focus of the Court should be on the committed and offense provision. There's no independent relevance to this. Oh, no, wait a minute. Committed the offense? Which act are you talking about? The committing of the offense? Which offense? The offense of going abroad and coming back again or the offense underlying the conviction? The offense for which he is inadmissible, which is the sexual battery offense he committed in 1995. And what evidence do you have? I'm sorry. I'm having a little difficulty hearing you. Can you hear me now, Your Honor? Yes. Okay. So if you could just speak loudly into the microphone. Yeah. What I was saying is there's no independent relevance to the guilty plea. He did not bargain for his ability to leave and reenter. The immigration judge here correctly decided that he did bargain for the ability for a waiver of inadmissibility under 212C, but he had no settled expectations that when he committed the offense back in 1995 he would be able to leave and reenter the country for the rest of his days in the United States. So you're arguing that the retroactive consequence here stems not from the conviction but rather from the offense? Yes, Your Honor. And he would have to have settled expectations as of that date. And I urge the Court to look at the case in Valencia, Alvarez, as well as the Calava case where in Calava the removal offense was the engaged in terrorist activity. Now, you've got a problem with your argument, and that is to say that the BIA did not rely on the committed an offense ground. It rather relied on the conviction ground. That's true, Your Honor, but the offense is a committed an offense provision. That's what was at issue. But the language says conviction and it says committed an offense. They're separate provisions in that statutory language. Isn't that right? Well, the statutory language at issue here for inadmissibility under 101A13C is committed an offense. It doesn't speak to a conviction. So if the Board said that. Where's the language? Let's look at it. As President Johnson used to say, let us reason together. Okay. And whenever he said that, you knew you were in trouble. You may not be, however. Let's look at the statutory language. What are we talking about? We're talking current version INA 101A13C, Roman numeral. And where can I find that in the papers that are here before me? It should be in both the Petitioner and the Respondent's brief. So give me the number again. I'm sorry. It's if you want the it's 8 U.S.C. 101A13C Roman numeral five or V. You have it here in the papers. I don't know exactly what page. Yeah. Take your I mean, we'll give you enough time to argue. So don't worry about that clock. But if you've quoted that statute in the papers, I'd like to see the actual statute. It's on page four, I believe, of the Respondent's brief. Okay. There we go. So you're arguing then under Section 101A3 terms admission admitted mean with respect to an alien lawful entry that has committed unless the I'm sorry, an alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission unless he has committed an offense. Now, what's your evidence for his having committed an offense? In the record? In the record, there was an incident report conducted by the police who which revealed that on the incident in question, Mr. Kameens had sexually batterized an 11-year-old female in his home by placing his mouth on the breast of this 11-year-old female. Subsequent to that, he was charged. And on the day in a status hearing, he pled guilty to that offense. Now, if DHS officials, regardless of whether he had decided to plead guilty or go to trial, if the police had said, you know, we didn't conduct the investigation properly, however, we have this evidence, they could have submitted that to Federal officials who could have conducted the same procedure here if they had it in their possession. They could have charged him before with sexual abuse of a minor or a crime of violence, which under this Court has considered the same statute that Mr. Kameens was convicted of and decided that was a crime of violence for immigration purposes, or they could have waited as they did here when he tried to leave and reenter the country back in 2001 and say, we have this evidence that you committed offense back in 1995. You are inadmissible. You know, so that it's not really his plea that's a critical event. It's the commission of the offense, and that mirrors the statutory language, and that mirrors the exact same language that was analyzed in Valencia-Alvarez and Cenodes-Cruz, where in Cenodes-Cruz it was the fact that the Petitioner had had settled expectations before Arrear was enacted. Specifically, he was eligible for discretionary relief. And as Valencia-Alvarez made clear, there was a two-part analysis in both those comparative cases, that it was the fact that he had committed an offense, but that in Cenodes-Cruz he had become eligible for discretionary relief, whereas in Valencia-Alvarez he never satisfied that. But if you pay attention to the timing of the cases in Cenodes-Cruz and Valencia-Alvarez, the acts in question in Valencia-Alvarez were after the passage of the statute. The not his commission of the offense. It was his discretion. He never became eligible for discretionary relief until after Arrear had been enacted. He had committed the offense and, in fact, pled guilty before that time. Now, let me ask you this. The BIA says, placed him in removal proceedings based on his conviction. They don't say based on his having committed the offense. Does that make a difference? Your Honor, that would not make a difference here, because even though he was convicted, the Board might have misstated or didn't state as clearly as it should have. But under subsequent circuit law of this Court, I believe the Board would have characterized its words or used the words more carefully. You know, the Board issued its decision before the case in Palava, before Valencia-Alvarez, and before the Supreme Court's decision in Fernandez-Vargas that really looks at what is the critical event for the person's settled expectation. Really, what is it? Is it a plea like it was in St. Cyr, where he, you know, relied on the availability of 212C relief when he made a plea? Even if the operative event is not conviction, but rather or operative word is not conviction, but rather commission, I've got a problem when the evidence for the commission of the offense is substantially the conviction based upon a plea. Because at that point, I think I'm almost at a distinction without a difference, because under St. Cyr, the reason is the St. Cyr says, listen, the reason we're not allowing retroactive consequences to this plea is that, you know, you're entitled to have the proof of the offense, the criminal offense, to be proved beyond a reasonable doubt at trial. And he gave up the valuable right to be having it proved at trial. So if your evidence for the commission of the criminal offense is the plea, I think we're right back into St. Cyr land, even if the word committed is used. Well, Your Honor, the government's position would be different. The government's position would be that DHS officials could have taken the incident report from the police and tried to use that before an immigration judge. Well, that would be a different case, wouldn't it? It may be. It would have been a different case, but it doesn't change the fact that there's evidence in the record besides his plea agreement. His plea agreement is not independently relevant yet. Did you have testimony? Oh, yeah, it was a police report. They're wrong sometimes. And they could have tried to inhibit or challenge that testimony at the hearing that would have taken place. Now, in Kavala, I understand that Kavala says, listen, if the operative word is committed and if he had committed it, it's irrelevant how a conviction might have taken place because we're only talking about committed. Does the court in Kavala tell us what evidence they had that there was commission of the offense, or do they simply say the offense was committed? Your Honor, I'm not entirely clear with you. Actually, I know the answer because I looked it up. I looked it up last night. The court doesn't say. It just says he committed the offense. And they don't tell us how they know he committed the offense. I think it's the same as the Kavala and Valencia Alvarez. They didn't really tell us in the decision, you know, what evidence they had that the person had committed an offense under the same language but under the stop time provision or in Kavala whether how that person had engaged in terrorist activity. Yeah. But it's a tricky question. If your primary or sole evidence is of commission of the act is the plea, because if it's the plea, for me, we're back under St. Cyr. Right. But if the plea had never taken place, let's say that he had gone to trial. Well, if he goes to trial, St. Cyr doesn't seem to apply. Right. But if he had tried to plea or the government and the criminal proceedings would have had to change, they could not have entered into a plea because there was a Fourth Amendment problem or anything, and they had to drop the charges. They could have still used their evidence and tried to put this person in removal proceedings without a plea, without, in this case, in this exact same situation. So I think it is a distinction with a huge, huge difference, absolutely, because commission of offense does not require a conviction. If it required a conviction, we're into St. Cyr. Well, I understand that, but I'm after the, okay, how do you know and what proof should be required in front of the IJ of commission of the offense? And as far as I can tell from the decision here in the BIA, they're simply relying on the fact that the conviction. Right. But they could have. There's evidence in the record where they could have relied on not only his testimony before the immigration court. Well, should we remand to them under Ventura and say, listen, you can't rely on the conviction by itself as evidence because that's St. Cyr land. You need actual evidence of commission and, okay, evaluate the evidence in the record, which they seem not to have done. Well, the government would submit that the evidence in the record would suggest there's no additional fact finding that would have to take place. Well, but, you know, we've got all kinds of problems here, one of them being, okay, how much evidence is in the record? What standard of proof is required? Is it beyond a reasonable doubt? I mean, none of this is fleshed out here. Maybe Mr. Kamens here has a defense, and he says, well, you know, I did plead, but if you really want to know, I didn't do it. You know, that happens sometimes. They plead under some pressure. They say the formulaic words, I did it, but in truth, they didn't. Well, you would expect him not to concede that he was removable and, in fact, not admit to the exact facts if that were true. In the immigration hearing, he actually went into great detail about what he did because he had an application for 212C, and he admitted to the exact facts. Yeah. Okay. This is a useful argument, and I think we've now taken you over, but I think we do understand your position. Why don't we hear from the other side? With due respect to my colleague, the ground of inadmissibility applied requires either a conviction or an admission of guilt. And what statutory language are you relying on? I'm relying on 1182A2, which is the ground of admissibility specifically charged in the notice to appear in this case, which is found on page 468 of the record. Okay. Let me go slowly here. I find that if I go slowly, I do better. Okay. So give me the language on which you're saying is the critical statutory language. The actual charge by the government against Mr. Kamens in the notice to appear is on page 468 of the record. There is actually an amendment, but this language is only included on page 468. Okay. Hang on a second. Okay. I'm now on page 468. And it specifies on the basis of foregoing a discharge, you are subject to removal from the United States, et cetera, under 212A2AII, which in the ‑‑ which is also 8 United States Code 1182A2AII. A2II. Okay. In that you are an alien who has been convicted of or who admits having committed or admits committing acts involving a crime involving moral turpitude. And if you look above, actually the above is superseded by page 468. I'm sorry, 463. Page 463 is the amendment to the notice to appear, the government issue. 463. Okay. Which specifies item number 4 on February 7th, 96, you plead guilty in the superior court. In other words, they're relying on the conviction. They're relying on the conviction. And at the time of the master calendar hearing, that's what was admitted to, that there was a conviction. And the conviction is what was at issue. If it was another case and the individual had only committed an act and never been convicted and the government said, we think you did this, his answer would have been, I haven't been convicted, and I deny that I did it, because you're only accusing me of doing it, and they would have no case. It's because there was an actual conviction that they had a case. And what do you do with the language to which the government has pointed us, which only says has committed an offense? Are you saying that's irrelevant because it wasn't charged? No. You have to keep reading. Has committed an offense identified in Section 212A2. Those offenses identified in 212A2 are the ones you are either convicted of or you admit committing. That's what we just read. So I think they use the language committed there because there are times when you don't need a conviction. One of those times, for example, is drug trafficking. You can be an admissible if the government thinks that you are engaged in drug trafficking, even if you didn't admit it or be convicted of it. That's not relevant here, but it's an example of why they didn't use the word conviction. They used the word committed in 101A13. But then they reference an offense identified in. So then you have to look at what's identified there, and that's what we just read on the charge of the NTA. Moral turpitude is only identified there if you're convicted of it or you admit committing it. In this case, it's the conviction that triggered it. So even though they used the word committed there, it's very general. You still have to make sure that 212 references it. And that's the answer. And one last point. I'm sorry. I'm out of time. Thank you. Roberts. Well, if you've got one last point, we'll hear it. We took government over. We'll take you over, too. The question that the Court asked me earlier about whether it's the plea or the travel, I just wanted to point out that the Fourth Circuit case Olectungi, that is the only circuit to have analyzed this retroactivity issue, also addressed that same question. And they — and their reasoning was also that it's the — it's the plea that is when you have the choice. That's Judge Ledig's opinion. That's correct. That well-known liberal. Okay. Thank you, Your Honor. Thank both of you for very good arguments on both sides. The case of Kamens v. Gonzalez is now submitted for decision. And the next case on the argument calendar is Gomez-Martinez v. Gonzalez. Thank you, Your Honor. Thank you, Your Honor.
judges: Hug, W. Fletcher, Holland